Filed 6/12/15  P. v. Stallworth CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B255004 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA129783) |
| v. | |
| D'ANDRE DWAYNE STALLWORTH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas I. McKnew, Jr., Judge.  Affirmed as modified and remanded for resentencing.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, David C. Cook and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant D'Andre Dwayne Stallworth raises contentions of juror misconduct and sentencing error following his conviction of robbery and carrying a loaded firearm in public, with an enhancement for personal firearm use.

For the reasons discussed below, the judgment is affirmed as modified and the matter is remanded for resentencing.

## BACKGROUND

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

Shortly before 1:00 a.m. on April 20, 2013, Ernesto Flores drove his girlfriend home to Bellflower. After she got out of the car and went into her house, Flores drove off. At an intersection, he stopped behind a red Pontiac. Stallworth and codefendant Dijon Barnes got out of the Pontiac, approached Flores with guns pointed at him, and demanded money. Saying he didn't have any money, Flores gave them his cell phone. Stallworth and Barnes ran back to the Pontiac and drove away.

Flores contacted the police. Officers stopped a car matching Flores's description of the Pontiac and arrested Stallworth and Barnes. Inside the car, the officers found a gun and Flores's cell phone.

Stallworth was tried together with codefendant Barnes. Stallworth was convicted of robbery and carrying a loaded firearm in public, with an enhancement for personal firearm use. (Pen. Code, §§ 211, 25850, subds. (a) & (c)(2), 12022.53.)[1] He was sentenced to state prison for a term of 12 years. This appeal followed.

## CONTENTIONS

Stallworth contends: (1) the trial court erred in failing to adequately investigate possible jury misconduct; and (2) there was insufficient evidence to sentence him for a felony conviction of carrying a loaded firearm in public.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

**DISCUSSION**

1. *Potential jury misconduct from a defendant's menacing look was adequately investigated.*

Stallworth contends we should remand this case to the trial court for further proceedings to determine whether jury misconduct occurred, based on his assertion that one of the defendants stared menacingly at a juror, causing the juror to be affected by the staring incident. There is no merit to this claim.

a. *Background.*

At a break during trial, the court and the parties held a discussion concerning possible jury misconduct involving Juror No. 2 and one of the defendants. The trial court stated: "I was advised by our bailiff . . . that one of the jurors . . . said that one of the two defendants looked at the juror and looked at that juror in a very hard fashion. And . . . as it was explained to me, that it was perhaps a threatening gesture on the part of one of the two defendants." The trial court then said to the defendants: "I don't know the truth of whether or not you knew you did look at somebody in a hard fashion or the juror was overly sensitive and interpreted it as a threatening gesture and you did not mean it. I do not know what happened and I don't intend to find out at this juncture. [¶] But I'm telling you do not stare . . . at the jurors out in the hallway."

Stallworth's defense counsel said the bailiff had told him that the complaining juror had reported "another juror had the same feeling but that other juror did not come up to Madam Bailiff to make this complaint. So, therefore, I'm concerned that maybe now they're talking – that there might have been some conversation between more than [*sic*] . . . ."

The trial court said it would instruct the jury about what had happened. Defense counsel asked the court to additionally "inquire of that juror if they can still be fair and impartial." The court said it would do so if defense counsel still wanted such an inquiry after hearing the jury instruction.

The jurors entered the courtroom and the trial court told them:

"The bailiff reported to me that one of the jurors felt that they were being . . . stared at by one of the defendants in a menacing manner. Now, 'menacing' may be the wrong word. In a threatening manner. [¶] Counsel and I have discussed this. Furthermore, I have been advised that the person who reported that as a problem to the bailiff also said that another juror had felt the same way. [¶] One, jurors are not to talk to one another about the case. That's easily said, but that is a court order. Secondly, if that did in fact occur, the defendants have been advised not to stare at the jurors, and the jurors are advised not to stare at the defendants."

The trial court then said that "if what occurred in your mind would in any way cause you to consider that staring incident when you are deliberating, that means that the defendant or defendants are not being given a fair trial." The court invited any juror who believed the incident might "influence . . . you in some manner, to report it again to the bailiff and then we may have to have a hearing. Just an informal hearing, but we'll be on the record as to your perceptions of what occurred and whether or not you can be fair and impartial."

At defense counsel's request, the trial court subsequently questioned Juror No. 2, asking: "The bailiff told me today that you had mentioned that one of the two defendants had glared at you and you thought you should report it; is that correct?" Juror No. 2 answered: "One of the comments that I made on the first day [during jury selection], I think . . . he didn't appreciate it, so I got a little glare." The court asked, "Do you feel in any way intimidated to the extent that it could interfere with your judgment in this case?," to which Juror No. 2 replied, "No. I'm fine." Juror No. 2 denied having discussed the incident with any other juror. After Juror No. 2 assured the trial court he would report any recurrence of the incident, the following colloquy occurred:

"The Court: You don't think it's a problem; correct?

"Juror No. 2: No, it's not. And I didn't discuss it with any other jurors. Maybe I talked to the bailiff. She may have thought that way, but I didn't talk to none of the other jurors about it.

"The Court: And none talked to you about it?

4

"Juror No. 2:  No.

"The Court:  I believe that takes care of it.  You don't have a say in the matter, Mr. Dumas [i.e., Stallworth's attorney].  But as I have mellowed over the last going on 54 years, do you have . . . questions you'd like to ask?"

Defense counsel then asked Juror No. 2:  "Did you tell the bailiff that you also thought Juror No. 4 might have felt the same type of perception that you had felt?"  Juror No. 2 replied, "No, I didn't mention no other juror besides me," to which defense counsel said, "Thank you.  No other questions."  All the attorneys then said they did not want the trial court to give any additional instructions to the jury.

b.  *Legal principles.*

"An accused has a constitutional right to a trial by an impartial jury.  [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is ' "capable and willing to decide the case solely on the evidence before it" ' [citations]."  (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294.)

The right to an impartial jury may be impaired by juror misconduct, which is a broad category that includes situations in which a juror has been the passive recipient of extra-judicial information.  "Juror misconduct, such as the receipt of information about a party or the case that was not part of the evidence received at trial, leads to a presumption that the defendant was prejudiced thereby and may establish juror bias.  [Citations.]" (*People v. Nesler* (1997) 16 Cal.4th 561, 578.)  "Any [such] presumption of prejudice is rebutted, and the verdict will not be disturbed, if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant.  [Citations.]"  (*In re Hamilton, supra,* 20 Cal.4th at p. 296.)

" 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct – like the ultimate decision to retain or discharge a juror – rests within the sound discretion of the trial court.  [Citation.]  The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror

5

during trial.' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1284.) "We emphasize that before a unanimous verdict is set aside, the likelihood of bias . . . must be *substantial*. . . . [T]he criminal justice system must not be rendered impotent in quest of an ever-elusive perfection. The jury system is fundamentally human, which is both a strength and a weakness. [Citation.] Jurors are not automatons. They are imbued with human frailties as well as virtues. If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias. To demand theoretical perfection from every juror during the course of a trial is unrealistic." (*In re Carpenter* (1995) 9 Cal.4th 634, 654-655.)

c. *Discussion.*

Stallworth contends the trial court erred in failing to conduct an adequate hearing into possible juror misconduct. He argues the court should have questioned all the remaining jurors or, at the very least, Juror No. 4, the juror who was mentioned as possibly having had similar concerns about a "menacing" look. Citing *People v. Hedgecock* (1990) 51 Cal.3d 395, Stallworth asserts an evidentiary hearing was warranted to resolve "the questions raised by the [discrepancy between the] bailiff's report and Juror No. 2's answers." Stallworth complains that simply inviting other jurors to voluntarily come forward, if they had also been affected, "was inadequate to resolve whether appellant's jury was infected by one or more jurors who may have committed misconduct by . . . conversing among themselves regarding a defendant or formed or expressed an opinion before jury deliberations."

However, holding a more extensive evidentiary hearing was not the only satisfactory method to address the possibility of juror misconduct here. *Hedgecock* held that "when a criminal defendant moves for a new trial based on allegations of jury misconduct, the trial court has discretion to conduct an evidentiary hearing to determine the truth of the allegations. We stress, however, that the defendant is not entitled to such a hearing as a matter of right. Rather, such a hearing should be held only when the trial court, in its discretion, concludes that an evidentiary hearing is necessary to resolve material, disputed issues of fact." (*People v. Hedgecock*, *supra*, 51 Cal.3d at p. 415.)

6

"This does not mean . . . that a trial court must hold an evidentiary hearing in every instance of alleged jury misconduct. The hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*Id*. at p. 419.)

*Hedgecock* reversed the judgment because, despite an allegation of extremely serious misconduct (that a bailiff had attempted to influence the jury's deliberations), the trial court refused to hold an evidentiary hearing, at which the jurors could have testified about the alleged misconduct, because the court believed it lacked the power to do so. (*People v. Hedgecock*, *supra*, 51 Cal.3d at p. 414.) The trial court here knew it had discretion to question the jurors about what occurred and it did question Juror No. 2. After determining that Juror No. 2 could remain impartial, the court admonished all the jurors against talking among themselves about the case,[2] and invited any other jurors who might have been bothered by the staring incident to notify the bailiff.

Stallworth did not object when the court resumed the trial after Juror No. 2's impartiality had been assured, and the jury had been admonished not to talk about the case before they started their deliberations.[3] Stallworth complains the trial court's invitation to the jurors to inform the bailiff if they had been bothered by what happened

---

[2] Section 1122, subdivision (b), provides: "The jury shall . . . at each adjournment of the court before the submission of the cause to the jury, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to . . . converse among themselves, or with anyone else, on any subject connected with the trial, or to form or express any opinion about the case until the cause is finally submitted to them." Violation of this admonition constitutes juror misconduct. (*In re Hitchings* (1993) 6 Cal.4th 97, 118.)

[3] Stallworth argues any objection would have been futile because the trial court told defense counsel, "You don't have a say in the matter, Mr. Dumas." This obviously was said rhetorically, as the trial court in its next breath allowed Dumas to question Juror No. 2.

7

was an inadequate substitute for a more extensive evidentiary hearing. However, "[t]he specific procedures to follow in investigating an allegation of juror misconduct are generally a matter for the trial court's discretion. [Citation.]" (*People v. Seaton* (2001) 26 Cal.4th 598, 676.)

This case is very similar to *People v. Fuiava* (2012) 53 Cal.4th 622, where Juror J. telephoned the trial court one morning very upset because she "had observed two female spectators in the courtroom, who she believed were 'aligned' with the defense, apparently speaking of the jurors and pointing at several of them. Although Juror J. did not perceive the pointing as intended to threaten the jurors, the incident concerned her. The trial court confirmed with Juror J. that no one had approached her or said anything to her. Juror J. stated, however, that as the jurors were walking through the parking lot on their way home the previous evening, 'some of the jurors talked about this,' and one juror, Juror A., suggested that 'perhaps a note should be sent to the court.' " (*Id.* at p. 701.) The trial court thought Juror J. should be excused, but was open to suggestions from the parties regarding what additional action should be taken. Neither party asked for the remaining jurors to be questioned and the trial resumed after Juror J. was replaced. (*Ibid.*)

On appeal, the defendant claimed the trial court breached its duty to investigate whether other members of the jury had been prejudiced by the spectators' alleged conduct. Noting that " 'not every incident involving a juror's conduct requires or warrants further investigation.' " *Fuiava* explained: " ' "The decision whether to investigate the possibility of juror bias, incompetence, or misconduct – like the ultimate decision to retain or discharge a juror – rests within the sound discretion of the trial court." ' " (*People v. Fuiava, supra,* 53 Cal.4th at p. 702.) *Fuiava* then held: "The trial court did not abuse its discretion . . . by taking a 'wait and see' approach concerning whether any juror other than Juror J. might have been affected by any actions of the courtroom spectators." (*Ibid*.) "[I]t was reasonable for the trial court to proceed on the belief that any other juror who might have been affected by asserted spectator conduct would call that circumstance to the court's attention, rather than the court suspending the trial in the midst of closing arguments to undertake an inquiry on the subject. [Citation.]

[¶] Defendant's argument that there is uncertainty in the record concerning what occurred because the trial court did not conduct an inquiry, and, therefore, we must conclude the trial court erred, overlooks the starting point of the analysis – whether the information the trial court was aware of when it made its decision warranted further inquiry. Adopting defendant's position would, in essence, mandate that the trial court conduct an inquiry whenever it becomes aware of any indication of a possibility that there might be good cause to remove a juror. That is not the law. [Citations.]" (*Id.* at p. 703.)

Stallworth complains that in this case, "at the end of the questioning held by the court, there were unresolved questions: Why did the bailiff state that another juror felt similarly that a defendant had made a threatening gesture, but then juror two said that he did not talk to anyone about it? Was the bailiff mistaken? Was the juror mistaken? If there was a conversation between Juror No. 2 and Juror No. 4, were other jurors involved in or exposed to these statements?" Stallworth questions whether "[t]he jurors may have just had a 'feeling' that one of the defendants looked menacing, or maybe the second juror did not even see the 'hard' look, but just agreed that the defendants looked menacing."

Given Juror No. 2's denial of having spoken about the matter to any other juror, the trial court reasonably proceeded by way of a "wait and see" approach. The alternative course Stallworth proposes on appeal would have risked falling into the kind of "fishing expedition" that *Hedgecock* cautioned against.

We conclude the trial court did not abuse its discretion in the manner in which it handled this allegation of juror misconduct.

2. *The carrying a loaded firearm in public conviction should have been sentenced as a misdemeanor, not a felony.*

Stallworth contends, and the Attorney General properly concedes, that the trial court erred by imposing a felony sentence on Stallworth's conviction of carrying a loaded firearm in public.

9

Section 25850, subdivision (a), provides: "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street . . . ." Subdivision (c)(2) of section 25850 stipulates that this offense is a felony "[w]here the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen." Here, the jury found *untrue* the allegation Stallworth knew, or had reasonable cause to believe, the firearm was stolen. Hence, Stallworth's conviction of carrying a loaded firearm in public should have been sentenced as a misdemeanor, rather than as a felony.

The imposition of an unauthorized sentence may be corrected at any time. (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13.) On remand, the trial court shall resentence Stallworth for the misdemeanor of carrying a loaded firearm in public.

## DISPOSITION

Stallworth's felony conviction of carrying a loaded firearm in public is reduced to a misdemeanor and the matter is remanded to the trial court for resentencing on that count. As modified, the judgment is affirmed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.                                        EGERTON, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.